**Ben TAULUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10-98-061-CR**

Court of Appeals of Texas,
Waco.

Nov. 18, 1998.

---

Sandy S. Gately, Gatesville, for appellant.

Riley J. Simpson, Dist. Atty., David A. Castillo, Asst. Dist. Atty., Gatesville, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS and Justice VANCE.

## OPINION

REX D. DAVIS, Chief Justice.

The court convicted Appellant Ben Taulung in a bench trial of sexual assault. *See* TEX. PEN.CODE ANN. § 22.011(a)(1)(A) (Vernon Supp.1998). The court sentenced him to five years' imprisonment and no fine. Taulung's appellate counsel filed a motion to withdraw from representation of Taulung with a supporting *Anders* brief. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). We notified Taulung that he had the right to respond to counsel's motion and brief, but he has not done so. *See Wilson v. State,* 955 S.W.2d 693, 696–97 (Tex.App.—Waco 1997, order). We now address the potential sources of error identified by counsel and conduct an independent review of the record "to decide

whether the case is wholly frivolous." *Anders,* 386 U.S. at 744, 87 S.Ct. at 1400.

## FACTUAL BACKGROUND

The record reflects that Taulung has been represented by counsel at all pertinent stages in these proceedings. The victim of the offense S.J., her husband, and a deputy sheriff testified during the guilt-innocence phase of trial. According to their testimony, Taulung, S.J., her husband, and others attended a wedding reception at a friend's home. They all consumed alcoholic beverages that night. S.J.'s husband fell asleep in the kitchen; she fell asleep on a hallway floor adjacent to the living room; and Taulung fell asleep on the living room floor about ten feet away.

S.J. testified that she awoke to find Taulung on top of her engaging in sexual intercourse with her. She pushed him away and called for her husband, yelling that Taulung had raped her. Her husband awoke and came into the living room. Her husband took her to a restroom and attempted to calm her. He then found Taulung "sort of huddled like in a ball" and kicked him while accusing him of feigning sleep. Taulung left the house apologizing numerous times about what had happened. He told S.J.'s husband "he thought he was at home."

S.J. and her husband went to the Copperas Cove Police Department to report the offense. They were referred to the Copperas Cove annex of the sheriff's department for investigation. A deputy sheriff interviewed S.J. about the incident sometime between 8:00 and 8:30 that morning. The deputy later interviewed Taulung. Taulung told the deputy, "I was so f——ed up I thought I was at home with my own woman." The deputy recalled that Taulung was probably not intoxicated during the interview but appeared to be suffering from a hangover.

The State rested after presenting the deputy's testimony. Taulung's counsel argued that he had engaged in the conduct alleged while acting under a mistakenly-formed belief about the identity of the person he was with. *See* TEX. PEN.CODE ANN. § 8.02(a) (Vernon 1994). The court rejected Taulung's

mistake-of-fact defense and found him guilty.[1]

Taulung testified during the punishment phase that he awoke and found himself on top of S.J. He agreed with the prosecutor on cross-examination that he knew he was in someone else's home engaging in sexual intercourse "from the very moment [he] engaged in sex." On recross, he conceded that he knew he was undressing S.J. and not his girlfriend.

## A "WHOLLY FRIVOLOUS" APPEAL

■ In *Anders*, the Supreme Court enunciated the procedures appointed counsel should follow in preparing and filing what we now call an *Anders* brief.

> [Counsel's] role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.

*Anders*, 386 U.S. at 744, 87 S.Ct. at 1400.

Texas courts have discussed the requirements of *Anders* on numerous occasions. One of the earliest and most frequently-cited cases on *Anders* is *Gainous v. State.* 436 S.W.2d 137 (Tex.Crim.App.1969). In *Gainous*, the Court observed that counsel had filed a brief pursuant to *Anders* in which he "assigned three grounds of error that might arguably support the appeal." *Id.* at 138. "After a thorough examination of the entire record," the Court determined itself "in full accord with counsel's conclusion that [the] appeal [was] frivolous and [found] none of the legal points or grounds of error arguable on their merits." *Id.* Since *Gainous*, the Court has consistently required counsel to set forth in an *Anders* brief "anything in the record that might arguably support the appeal." *High v. State*, 573 S.W.2d 807, 811 (Tex. Crim.App. [Panel Op.] 1978); *accord Stafford*

*v. State*, 813 S.W.2d 503, 510 n. 3 (Tex.Crim. App.1991).

■ However, the Court of Criminal Appeals has not addressed what it means for an appeal to be "wholly frivolous." Counsel's conclusion that an appeal is "wholly frivolous" should not be reached lightly. *Johnson v. State*, 885 S.W.2d 641, 645 (Tex.App.— Waco 1994, pet. ref'd). The United States Supreme Court has defined the term thus:

> The terms "wholly frivolous" and "without merit" are often used interchangeably in the *Anders* brief context. Whatever term is used to describe the conclusion an attorney must reach as to the appeal before requesting to withdraw and the court must reach before granting the request, what is required is a determination that the appeal lacks any basis in law or fact.

*McCoy v. Court of Appeals*, 486 U.S. 429, 438 n. 10, 108 S.Ct. 1895, 1902 n. 10, 100 L.Ed.2d 440 (1988). "If the only theories that the attorney can discover after [a] conscientious review of the record and the law are 'arguments that cannot *conceivably* persuade the court,' then the appeal should be considered frivolous." *Johnson*, 885 S.W.2d at 645 (quoting *McCoy*, 486 U.S. at 436, 108 S.Ct. at 1901).

We have also said "[a]n appeal is 'frivolous' when 'the trial court's ruling[s were] correct' or 'the appellant was not harmed by the ruling[s].'" *Wilson*, 955 S.W.2d at 695 n. 2 (quoting *High*, 573 S.W.2d at 813). This definition, albeit different from that stated in *McCoy*, merely represents a different facet of the *Anders* process. According to *Anders*, once counsel has determined an appeal is frivolous, she must file a brief with the appellate court identifying "anything in the record that might arguably support the appeal" and "discuss[ing] either why the trial court's ruling[s were] correct or why the appellant was not harmed by the ruling[s]." *High v. State*, 573 S.W.2d at 811, 813. If the appellate court agrees after independently reviewing the record that the rulings were correct or

---

1. Based on Taulung's statement to the deputy, it appears that any "mistake of fact" Taulung may have made was due to his intoxication. Voluntary intoxication is no defense to prosecution.

Tex. Pen.Code Ann. § 8.04(a) (Vernon 1994); *Juhasz v. State*, 827 S.W.2d 397, 406 (Tex.App.— Corpus Christi 1992, pet. ref'd); *accord Tucker v. State*, 771 S.W.2d 523, 533 (Tex.Crim.App.1988).

the appellant was not harmed thereby, the appeal is frivolous, and the court will grant counsel's motion to withdraw.

This Court is "duty bound" as an intermediate appellate court to apply the law as interpreted by the Court of Criminal Appeals. *Flores v. State,* 883 S.W.2d 383, 385 (Tex.App.—Amarillo 1994, pet. ref'd); *accord Campbell v. State,* 765 S.W.2d 817, 823 (Tex. App.—San Antonio 1988, pet. ref'd). Thus, we will defer the resolution of any conflict which may exist between *McCoy* and *High* to that Court.

## COUNSEL'S BRIEF

Counsel's brief presents two potential sources of error which question the legal and factual sufficiency of the evidence to support Taulung's conviction. At first blush, such contentions would not seem to fit within the category of "arguments that cannot conceivably persuade the court" because an advocate can always present an argument, regardless of how convincing it may be, that the evidence is lacking. However, we note that Texas courts have addressed (and rejected) "arguable" sufficiency challenges in the *Anders* context on many occasions. *See, e.g., Spencer v. State,* 465 S.W.2d 370, 370–71 (Tex.Crim.App.1971); *Bruns v. State,* 924 S.W.2d 176, 178–79 (Tex.App.—San Antonio 1996, no pet.); *Crittendon v. State,* 923 S.W.2d 632, 635 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Mays v. State,* 904 S.W.2d 920, 925 (Tex.App.—Fort Worth 1995, no pet.) (sufficiency challenge rejected under the *DeGarmo* doctrine).

▮ The question of whether a sufficiency challenge is "frivolous" must necessarily be decided on a case-by-case basis. Thus, we will conduct an independent review of the record, consider the potential evidentiary challenges raised, and decide whether we agree with counsel that this "appeal lacks any basis in law or fact." *McCoy,* 486 U.S. at 438 n. 10, 108 S.Ct. at 1902 n. 10.

## APPLICATION

### 1. THE DEGARMO DOCTRINE

▮ Counsel presents two potential sources of error in her *Anders* brief but claims that Taulung's testimony constitutes a judicial admission to the offense alleged and thus waives any error which might have occurred during the guilt-innocence phase of trial. We disagree for the following reasons.

▮ According to the *DeGarmo* doctrine, an accused's judicial admission during the punishment phase of trial waives the right to challenge any errors which occur during the guilt-innocence phase. *McGlothlin v. State,* 896 S.W.2d 183, 186–87 (Tex. Crim.App.1995); *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App.1985). To qualify as a "judicial admission," the accused's statement of guilt should be a "clear and intentional confession[ ]." *Avila v. State,* 954 S.W.2d 830, 835 (Tex.App.—El Paso 1997, pet. ref'd). Where the accused admits he committed the act(s) alleged but does so to assert a defense or to claim a lesser culpable mental state, the confession will not waive error under *DeGarmo. See id.* at 835–36; *Travis v. State,* 921 S.W.2d 559, 563 (Tex.App.—Beaumont 1996, no pet.). The requirement that a confession be *"intended* and *given"* underscores the proposition that the *DeGarmo* doctrine is not intended to degenerate into chicanery, in which the prosecution seeks to elicit 'magic words' from the defendant." *Avila,* 954 S.W.2d at 835.

Taulung's testimony falls within this exception to the *DeGarmo* doctrine. He admitted that he had engaged in sexual intercourse with S.J. without her consent but that he had done so while acting under a mistakenly-formed belief about the identity of the person he was with. *See* TEX. PEN.CODE ANN. § 8.02(a). The prosecutor labored on cross-examination and recross examination to elicit a piecemeal "confession" from Taulung. We do not believe this constitutes a judicial admission for purposes of the *DeGarmo* doctrine. *See Avila,* 954 S.W.2d at 835–36; *Travis,* 921 S.W.2d at 563.

### 2. SUFFICIENCY OF THE EVIDENCE

▮ Counsel's two potential sources of error question the legal and factual sufficiency of the evidence to support Taulung's conviction. In light of Taulung's statements to S.J.'s husband and the deputy, the only ele-

ment on which a question of evidentiary sufficiency exists is whether his claimed mistaken belief negated the culpable mental state alleged by the State. *See* TEX. PEN.CODE ANN. § 8.02(a).

The indictment alleges Taulung "intentionally and knowingly" committed the offense. The only evidence suggesting Taulung did not possess the requisite culpability comes from his statement to S.J.'s husband that "he thought he was home" and his explanation to the deputy that due to intoxication he thought he was in Corsicana with his girlfriend.

In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim.App.1991) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Applying this standard to the evidence in Taulung's case, we conclude it is legally sufficient to support the conviction.

When presented with a factual insufficiency claim, we discard the prism of the light most favorable to the verdict. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). We reverse "only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* We consider all the evidence in the record related to the contested issue, "not just the evidence which supports the verdict." *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim.App.1997). We review the evidence tending to prove the issue, "and compare[ ] it to the evidence which tends to disprove that [issue]." *Id.* We give appropriate deference to the decision of the trier of fact. *Clewis*, 922 S.W.2d at 135. We do not set aside the "verdict merely because [we] feel that a different result is more reasonable." *Id.* (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986)).

The court as trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Lynch v. State*, 952 S.W.2d 594, 596 (Tex. App.—Beaumont 1997, no pet.); *Townsend v. State*, 949 S.W.2d 24, 28 (Tex.App.—San Antonio 1997, no pet.); *accord Reeves v. State*, 969 S.W.2d 471, 479 (Tex.App.—Waco 1998, pet. ref'd) (jurors as triers of fact are "sole judges of the credibility of the witnesses and the weight to be given the evidence").

In Taulung's case, the court heard all the evidence and rejected his mistake-of-fact defense. Under *Clewis*, we must give appropriate deference to his verdict. *Clewis*, 922 S.W.2d at 135. We cannot say from the record that the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 134. Accordingly, the evidence is factually sufficient to support Taulung's conviction.

## CONCLUSION

We have reviewed the record and have found no errors of arguable merit. *See Wilson*, 955 S.W.2d at 698. Accordingly, we grant counsel's motion to withdraw and affirm the judgment. *Id.*